915 A.2d 1022

George STRATAKOS, et ux.

v.

Steven J. PARCELLS, et ux.

No. 253, Sept. Term 2006.

Court of Special Appeals of Maryland.

Jan. 30, 2007.

Robert N. Levin, Rockville, for appellant.

William D. Foote, Jr., Rockville, for appellee.

Panel MURPHY, C.J., KRAUSER and BARBERA, JJ.

BARBERA, J.

In this appeal, we construe a clause of a real estate contract that provides for the award of attorney's fees to a party to the contract who prevails in a dispute "arising out of" the contract. In particular, we must decide if a lawsuit by the buyers alleging that the sellers made false or negligent representations in the Maryland Residential Property Disclosure Statement is a dispute arising out of the real estate contract, notwithstanding that the disclosure statement was not made part of the contract. The Circuit Court for Montgomery County (Mason, J.) concluded that the suit was such a dispute and, pursuant to the contract, awarded attorney's fees to the sellers as the prevailing parties.

For the reasons that follow, we agree with the circuit court's legal conclusion and therefore affirm the fee award.

## FACTS

In December 2000, George Stratakos and Jami Rankin, appellants, purchased from Steven J. Parcells and Harriet Parcells, appellees, a parcel of improved residential property located in Montgomery County, Maryland ("the property"). The parties entered into a written contract for the sale of the property.

In connection with the sale, and in accordance with Maryland Code (1974, 2003 Repl.Vol., 2006 Supp.), § 10–702 of the Real Property Article, appellees provided appellants with a Maryland Residential Property Disclosure Statement (hereafter "disclosure statement"). The Montgomery County Notice and Disclosure Addendum to the contract of sale referred to the disclosure statement, advising the buyer of the right to receive a disclosure (or disclaimer) statement from the seller unless exempt. The disclosure statement itself, however, was not made part of the contract.

Appellees stated in the disclosure statement that they were not aware of any defects in the interior or exterior structural

systems of the property. Appellees further stated that they were not aware of any previous infestations of wood-destroying insects or any repairs made to the property because of a previous wood-destroying insect infestation.

In August 2003, appellants began renovations on the property. During the renovations, they discovered extensive damage in a covered crawl space, which they alleged was caused by wood-destroying insects.

On December 15, 2004, appellants filed a complaint against appellees alleging fraudulent misrepresentation, negligent misrepresentation, and breach of warranty. Appellants argued that the factual representations appellees made in the disclosure statement were false, and that appellees made the statements knowing they were false or with reckless indifference to the truth. Appellants alleged, *inter alia*, that they "would not have purchased the Property had the misrepresentations not been made," and that "the House was worth considerably less than [appellants] paid for it in the belief that the House was as it was represented to be in the Disclosure Statement."

In the *ad damnum* clause of the complaint, appellants sought $30,000.00 in compensatory damages, $150,000.00 in punitive damages, and attorney's fees pursuant to Paragraph 23 of the real estate contract. Paragraph 23 entitles the prevailing party, in any action or proceeding involving a dispute between the parties "arising out of" the real estate contract, to recover costs and reasonable attorney's fees.

On August 29, 2005, appellants filed an amended complaint setting forth essentially the same allegations as those made in the original complaint. Appellants again sought monetary relief, including attorney's fees "per the contract between the parties."

Although appellees were married when they sold the property to appellants, they were separated when suit was filed. Consequently, they separately defended the suit.

On September 21, 2005, appellee Steven Parcells filed a motion for summary judgment, denying the allegations set forth in the amended complaint. Six weeks later, the motion came on for a hearing. The court granted the motion, reasoning that appellants failed to show that they had incurred actual injury from the alleged misrepresentations, such as increased renovation costs.

The following day, Steven Parcells filed a motion for award of costs and attorney's fees. In the motion, he argued that the real estate contract between the parties provides that, in the event of a dispute, the prevailing party is entitled to receive from the other party reasonable attorney's fees. Thereafter, appellants filed a motion for reconsideration.

The court held a hearing on appellants' motion for reconsideration and Mr. Parcells's motion for award of costs and attorney's fees. The court denied the motion for reconsideration, and awarded Mr. Parcells costs and attorney's fees in the amount of $14,105.14.

On January 13, 2006, appellee Harriet Parcells filed a motion for summary judgment. Following a hearing, the court granted the motion. Ms. Parcells also filed a motion requesting $16,975.00 in costs and attorney's fees, which the court granted.

Both awards of attorney's fees were reduced to judgment. This appeal followed.

## DISCUSSION

Appellants' sole contention on appeal is that the circuit court erred in awarding attorney's fees to appellees pursuant to Paragraph 23 of the real estate contract. Paragraph 23 states:

> In any action or proceeding involving a dispute between the Purchaser and the Seller arising out of this Contract, the prevailing party will be entitled to receive from the other party reasonable attorney's fees to be determined by the court or arbitrator(s).

Appellants argue that the parties' dispute relating to the representations made in the disclosure statement does not arise out of the contract; consequently, Paragraph 23 was not triggered and the court committed legal error by awarding attorney's fees to appellees.

Appellees respond that the allegations set forth in appellants' complaint arose out of the real estate contract; therefore, Paragraph 23 entitles them to recover attorney's fees. They argue that appellants could bring a suit for misrepresentation and breach of warranty only because the parties had entered into a contract for the sale of real property.

Appellee Harriet Parcells also points out that RP § 10–702 sets forth the requirements of a disclosure statement in a residential real estate transaction. She argues that, "[b]y virtue of the statute, the disclosure duties it creates are inextricably intertwined with the sales contract."[1]

---

1. RP § 10–702 provides, in pertinent part:

   (c) *Duty of vendor; development of form.*—(1) A vendor of single family residential real property shall complete and deliver to each purchaser:

   (i) A written residential property condition disclosure statement on a form provided by the State Real Estate Commission; or

   (ii) A written residential property disclaimer statement on a form provided by the State Real Estate Commission.

   (2) The State Real Estate Commission shall develop by regulation a single standardized form that includes the residential property condition disclosure and disclaimer statements required by this subsection.

   (d) *Contents of residential property disclaimer statement.*—The residential property disclaimer statement shall:

   (1) Disclose any latent defects of which the vendor has actual knowledge that a purchaser would not reasonably be expected to ascertain by a careful visual inspection and that would pose a direct threat to the health or safety of the purchaser or an occupant; and

   (1) State that:

   (i) Except for latent defects disclosed under item (1) of this subsection, the vendor makes no representations or warranties as to the condition of the real property or any improvements on the real property; and

   (ii) The purchaser will be receiving the real property "as is", with all defects, including latent defects, that may exist, except as otherwise provided in the contract of sale of the real property.

   (e) *Contents of residential property disclosure statement.*—(1) The residential property disclosure statement shall disclose those items

Appellee Steven Parcells makes the additional argument that the dispute "not only arose out of the contract, but was based, in part, on a specific provision of the contract." He refers to appellants' request for attorney's fees in the *ad damnum* clause of the complaint pursuant to Paragraph 23.[2]

that, to carry out the provisions of this section, the State Real Estate Commission requires to be disclosed about the physical condition of the property.

(2) The disclosure form shall include a list of defects, including latent defects, or information of which the vendor has actual knowledge in relation to the following:

(i) Water and sewer systems, including the source of household water, water treatment systems, and sprinkler systems;

(ii) Insulation;

(iii) Structural systems, including the roof, walls, floors, foundation, and any basement;

(iv) Plumbing, electrical, heating, and air conditioning systems; .

(i) Infestation of wood-destroying insects;

(vi) Land use matters;

(vii) Hazardous or regulated materials, including asbestos, lead-based paint, radon, underground storage tanks, and licensed landfills;

(viii) Any other material defects of which the vendor has actual knowledge; and

(ix) Whether the smoke detectors will provide an alarm in the event of a power outage.

(3) The disclosure form shall contain:

(i) A notice to prospective purchasers and vendors that the prospective purchaser or vendor may wish to obtain professional advice about or an inspection of the property;

(ii) A notice to prospective purchasers that disclosure by the seller is not a substitute for an inspection by an independent home inspection company, and that the purchaser may wish to obtain such an inspection;

(iii) A notice to purchasers that the information contained in the disclosure statement is the representation of the vendor and is not the representation of the real estate broker or salesperson, if any; and

(iv) A notice to purchasers that the information contained in the disclosure statement is not a warranty by the vendor as to:

1. The condition of the property of which the vendor has no actual knowledge; or

2. Other conditions of which the vendor has no actual knowledge.

(4) The vendor is not required to undertake or provide an independent investigation or inspection of the property in order to make the disclosures required by this section.

2. Our disposition of the case does not require us to reach Mr. Parcells's additional argument.

█ "Ordinarily, in the absence of a statute, rule, or contract expressly allowing the recovery of attorney's fees, a prevailing party in a lawsuit may not recover attorney's fees. This is true whether the action seeking fees sounds in contract or tort." *Chang v. Brethren Mut. Ins. Co.*, 168 Md.App. 534, 551–52, 897 A.2d 854 (2006) (citation omitted). The parties do not dispute that Paragraph 23 is a valid provision for the award of attorney's fees to the prevailing party in litigation concerning a dispute arising out of the contract. Indeed, such provisions "generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520 (2006).

The parties' debate focuses more narrowly on how Paragraph 23 should be read. As we have said, they disagree about what is meant by a dispute "arising out of" the contract. Resolution of the issue requires us to decide the proper construction of that phrase.

█ We adhere in Maryland "to the objective theory of contract interpretation, giving effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation." *Id.* at 198, 892 A.2d 520. "Contract interpretation, including the determination of the ambiguity of a contract, is a question of law and subject to *de novo* review." *United Services Auto. Ass'n v. Riley*, 393 Md. 55, 79, 899 A.2d 819 (2006). "[I]n the construction of contracts, words are to be given their ordinary meaning[.]" *Auction and Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 343, 731 A.2d 441 (1999). If the language of the contract is plain and unambiguous, there is no room for construction. *United Services*, 393 Md. at 80, 899 A.2d 819. In that instance, the "court must presume that the parties meant what they expressed." *Id.* (citation and internal quotation marks omitted).

█ No reported opinion of the Court of Appeals or this Court addresses what is meant in a contract provision for attorney's fees by "a dispute ... arising out of" the contract. But both appellate courts have construed other contract clauses containing "arising out of" language. One example is *CSX*

*Transp., Inc. v. Mass Transit Admin.*, 111 Md.App. 634, 683 A.2d 1127 (1996), *aff'd,* 349 Md. 299, 708 A.2d 298 (1998).

*CSX Transportation* involved construction of such language in the indemnification provision of a state procurement contract. The contract required the Mass Transit Administration ("MTA") to indemnify CSX Transportation, which operates the Maryland Rail Commuter Service ("MARC"), for "any and all claims arising out of 'Contract Service.' " *Id.* at 636, 683 A.2d 1127. CSX Transportation submitted a claim to MTA for indemnification of property damage losses resulting from a collision between a MARC train and a backhoe owned by a third party. *Id.* CSX Transportation believed that the claim was subject to indemnification because it was one "arising out of 'Contract Service.' " The MTA and the Board of Contract Appeals disagreed and denied the claim. The Circuit Court for Howard County affirmed on judicial review of CSX Transportation's petition. *Id.* at 636–37, 683 A.2d 1127. CSX Transportation appealed to this Court. We reversed.

In construing the phrase "arising out of 'Contract Service,' " we applied the definition of the term "arising out of" that the Court of Appeals had used in *Northern Assurance Co. v. EDP Floors,* 311 Md. 217, 230, 533 A.2d 682 (1987). *See CSX Transp.,* 111 Md.App. at 640–41, 683 A.2d 1127. In *EDP Floors,* a case involving the duty of an insurance company to defend an insured employer from a tort suit based on an employee's negligence, the Court concluded that the "words 'arising out of' must be afforded their common understanding, namely, to mean originating from, growing out of, flowing from, or the like." 311 Md. at 220–21, 230, 533 A.2d 682.

We also noted in *CSX Transportation* that, although the words "arising out of" require a showing of a causal relationship, "recovery is not limited to . . . direct and proximate cause." 111 Md.App. at 641, 683 A.2d 1127 (citations and internal quotation marks omitted). Relying on the *EDP Floors* Court's definition of "arising out of" and the construction given the term in other contract cases within and outside of Maryland, we held in *CSX Transportation* that, for the indemnification provision to apply, it was enough that the MARC

train was a cause of the injury notwithstanding that "the injury may also have arisen out of other causes further back in the sequence of events[.]" *Id.* at 643–44, 683 A.2d 1127.

*CSX Transportation* and *EDP Floors* are cases involving construction of liability insurance contract provisions, whereas the case before us involves a contract provision of a very different sort. Those cases nevertheless are helpful to the present case in that, in both of those cases, construction of the "arising out of" language was based on the common understanding of the phrase. As we construe that phrase in the present case, we shall afford it the same common understanding, that is, "to mean originating from, growing out of, flowing from, or the like."

Also helpful to our analysis is *Marcus v. Fox*, 150 Ariz. 333, 723 P.2d 682 (1986), a case upon which Steven Parcells relies in support of his position that the dispute between the parties arises out of the real estate contract. In *Marcus*, the jury found that the plaintiffs were fraudulently induced to enter into a contract to purchase real property. *Id.* at 683. An Arizona statute provides for attorney's fees to a prevailing party in any contested action "arising out of a contract[.]" ARIZ.REV.STAT. § 12–341.01(A). The trial court ruled the statute inapplicable and denied the plaintiffs' request for attorney's fees as the prevailing party to the suit. *Id.* The intermediate appellate court affirmed. *Id.* The Arizona Supreme Court reversed, holding that the plaintiffs were entitled to attorney's fees because the cause of action arose out of the real estate contract. *Id.* at 684–85. The court wrote:

> It was that contract [for the sale of real estate] which prompted this suit and also served as the basis for [the appellants'] claim. Stated otherwise, [the appellants'] cause of action for tort could not have existed but for the fraudulently induced contract. Accordingly, we find the [appellants'] action to invalidate the contract was one "arising out of a contract".....

*Id.*

Appellants respond that appellee Steven Parcells misreads *Marcus* and that, properly read, the case "strongly supports"

appellants' position. They point out the limits of the *Marcus* court's holding, as reflected by the following language of the opinion:

> While we hold that attorney's fees are not appropriate based on the mere existence of a contract somewhere in the transaction, we agree with Marcus that the requisite causal link between his claim and the underlying contract is present.
>
> As we said in [*Sparks v. Republic Nat'l. Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982)], the language of § 12–341.01(A) clearly states that attorney's fees are recoverable only in cases "arising out of a contract." We believe this language is not limited to only those cases in which a contract is entered into and subsequently breached [*Sparks*]. It may also include those cases in which a contract is entered into and later found void due to a claim of fraudulent inducement. For example, in the present case, Marcus was attempting to invalidate the contract with Fox. It was that contract which prompted this suit and also served as the basis for his claim.

723 P.2d at 684–85 (citation and footnote omitted).

Appellants argue that *Marcus* likely would have been decided differently had the suit not been based on an attempt to invalidate the contract. Appellants point out that their suit alleged three causes of action, none of which alleged a breach of the contract of sale or sought rescission or invalidation of it.

We concur in appellants' interpretation of *Marcus*. Indeed, a subsequent decision of the Arizona Supreme Court reinforces appellants' reading of that case. *See Morris v. Achen Construction Co., Inc.*, 155 Ariz. 512, 747 P.2d 1211, 1213 (1987) (restating the holding of *Marcus* as "where the validity of the contract was challenged on grounds of fraudulent inducement, the claim was one 'arising out of the contract' within the meaning of [ARIZ.REV.STAT.] § 12–341. 01(A))." We do not agree, however, that Marcus "strongly supports"

appellants' position and dictates reversal of the fee award in this case.[3]

*Marcus* is only persuasive authority to which we are not bound. Moreover, the case addresses the Arizona Supreme Court's construction of a statute, not a contract term. We take from the decision only what we find helpful to the analysis of the issue before us. What is helpful to that analysis is the notion expressed in *Marcus* that a cause of action in tort can be said to arise out of the contract if it could not exist but for the contract. That notion is consistent with the definition of "arising out of" employed by the Court of Appeals in *EDP Floors* and this Court in *CSX Transportation.*

Appellants ask us to consider two additional cases, *Peer v. First Fed. Sav. and Loan Ass'n of Cumberland,* 273 Md. 610, 616–17, 331 A.2d 299 (1975), and *Myers, supra.* Appellants contend that both cases support their position that the attorney's fees provision of the real estate contract does not apply to the instant dispute. Neither case advances appellants' cause.

In *Peer,* the Court of Appeals considered whether a real estate loan disclosure statement, in which the appellee offered credit life and disability insurance to the appellant, constituted a contract to provide credit life insurance. 273 Md. at 611–12, 331 A.2d 299. The Court found that the disclosure statement did not constitute a contractual relationship, noting that " 'the disclosure statement's function is to exchange information and to give both parties notice prior to the contractual relation-

---

3. Appellants brought *Morris* and a second case, *Miller v. Schaefer,* 80 Md.App. 60, 559 A.2d 813 (1989), to our attention for the first time in oral argument. *Morris* is instructive for the reason we mention, but is factually distinguishable. The Arizona Supreme Court held in *Morris* that attorney's fees should not have been awarded under the Arizona attorney's fees statute because the dispute was "wholly an action for damages for fraud where the alleged fraud is claimed to have resulted in one party entering into a contract with a third party." 747 P.2d at 1213.

*Miller* is also factually distinguishable from the present case and does not assist us otherwise in deciding this appeal.

ship[.]' " *Id.* at 616, 331 A.2d 299 (quoting *Burgess v. Charlottesville Sav. and Loan Ass'n,* 349 F.Supp. 133 (1972), *remanded by* 477 F.2d 40 (4th Cir.1973)).

Appellants argue that, pursuant to the Court's rationale in *Peer,* the disclosure statement that appellees provided is not a contract. We agree with appellants that the disclosure statement is not a contract. But we are not asked to determine whether the disclosure statement is a contract; rather, we must determine whether a dispute related to misrepresentations made in the disclosure statement arises out of the real estate contract. *Peer* does not assist us.

Appellants also direct us to *Myers, supra.* In that case, the parties entered into a contract for the sale of real property that contained a provision requiring an award of attorney's fees to the prevailing party in any dispute that arose out of the contract. 391 Md. at 194, 892 A.2d 520. The parties subsequently executed an addendum to the contract that did not provide for attorney's fees. *Id.* at 194, 208, 892 A.2d 520. For reasons not relevant here, the addendum gave rise to a new contract that incorporated the terms of the original contract. *Id.* at 195, 208, 892 A.2d 520. The Court thus held that the provision relating to attorney's fees set forth in the original contract applied to a dispute that arose out of the addendum. *Id.* at 208, 892 A.2d 520.

Like *Peer, Myers* does not assist us in resolving the present case. The disagreement between the parties in *Myers* centered on whether the prevailing party to a dispute arising out of the addendum was entitled to invoke the fee provision contained in the original real estate contract. It was undisputed that, upon the parties' execution of the addendum, all other terms and conditions set forth in the contract remained in full force. By contrast, in the present case, the parties do not quarrel about the existence of the fee provision in the real estate contract. They disagree about the proper construction of that provision, in particular, whether their dispute arises out of the contract.

At the February 23, 2006 hearing in the present case, the court heard argument from counsel for appellants and counsel for Steven Parcells regarding the application of Paragraph 23 to the instant dispute. The court stated preliminarily: " '[A]rising out of the contract' . . . is interpreted as broad to the extent the claim . . . is predicated upon misrepresentation." The court added: "That can only occur in the presence of a duty. The duty arises out of the contract." The court then stated:

> [T]he claim could not exist apart from the contract. The proof of the contract is necessary to [prove] the claim, because had there been no contract, you would have no claim. So it arises out of the contract as far as the Court's concerned, because I believe that that phrase is interpreted more broadly than simply a contract action.

Upon our independent review of Paragraph 23, we conclude that the court correctly construed it. The dispute between the parties relating to the alleged misrepresentations in the disclosure statement mandated by RP § 10–702 "flowed from" or "grew out of" the contract. Absent the contract for the sale of real property, appellants' claims of misrepresentation and breach of warranty simply could not have existed. The provisions of RP § 10–702, moreover, reflect the extent to which the disclosure statement is intertwined with the real estate contract itself. We have noted the required disclosures by the seller and notices to the buyer. *See supra* note 1. RP § 10–702(e) also requires the seller to deliver the disclosure statement to the buyer "on or before entering into a contract of sale" by the buyer and seller, and, upon delivery, the buyer must "date and sign a written acknowledgment of receipt, which shall be included in or attached to the contract of sale." And RP § 10–702(g) grants the unconditional right of rescission of the contract of sale to a buyer who does not receive the disclosure statement on or before entering into the contract, so long as the buyer provides timely written notice to the seller.

We hold that the parties' dispute, though focused on alleged misrepresentations in the disclosure statement, was nonethe-

less a dispute "arising out of" the real estate contract. The court therefore did not err in determining that appellees were entitled, as prevailing parties to the suit, to attorney's fees in accordance with the provisions of the contract.

**JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.**